_____

No. 95-2463
_____

Fingerhut Corp.,                      *
                                      *
          Appellee,                   *   Appeal from the United States
                                      *   District Court for the
     v.                               *   District of Minnesota.
                                      *
Ackra Direct Marketing                *
Corp. and Michael                     *
Ackerman, individually,               *
                                      *
          Appellants.                 *

_____

Submitted: December 14, 1995

Filed: June 26, 1996
_____

Before MCMILLIAN and BEAM, Circuit Judges and PERRY, District Judge.[*]

_____

PERRY, District Judge.

     Ackra Direct Marketing Corp. and Michael Ackerman appeal the district court's[1] entry of default judgment.  We affirm.

I.    BACKGROUND

     Appellee Fingerhut Corp. filed a lawsuit against Ackra Direct Marketing Corp. and Weyee Investment Co. Ltd. d/b/a Random Enterprises in Minnesota state court on July 1, 1992.  The dispute

_____

[*]The HONORABLE CATHERINE D. PERRY, United States District Judge for the Eastern District of Missouri, sitting by designation.

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, adopting the Report and Recommendation of United States Magistrate Judge Franklin L. Noel.

arose out of the sale of 82,050 steam irons by Ackra to Fingerhut, which Fingerhut alleges were defective in that they caused fires and resulted in burn injuries and electrical shock to several consumers.  Ackra removed the case to federal court pursuant to 28 U.S.C. § 1441(a).  Over the course of the next one and one-half years, Fingerhut amended its complaint three times, and added defendants Ackerman, Ira Smolev, Marc Platt and Esther Wong.[2]  Ackerman and Smolev each own 50% of Ackra, which is currently defunct and insolvent but which has not been formally dissolved.  Fingerhut alleged claims for breach of contract, breach of warranty, fraud and alter ego liability.

From July 1992 to April 1994, appellants were represented by legal counsel.  During that twenty-two month period, appellants delayed the discovery process by submitting late and non-responsive discovery answers and by failing to produce some discovery altogether.  Pretrial motions were referred to a magistrate judge, who granted Fingerhut's three motions to compel discovery.  On March 24, 1994, appellants' counsel moved to withdraw from their representation of Ackra, Ackerman and Smolev, stating that a conflict had developed in their representation of multiple defendants and that the defendants had refused to pay legal expenses.  The magistrate judge granted counsel's motion to withdraw on April 28, 1994, in an order that stated:

> All three defendants are ordered to have separate counsel enter an appearance on or before May 16, 1994.  If new counsel have not appeared by that date, the case will proceed and all unrepresented defendants will be expected to comply with their discovery obligations and with all of the Federal Rules of Civil Procedure and the local rules of this court.

After their counsel were allowed to withdraw, appellants did not obtain substitute counsel and did not participate in any manner

---

[2]Default judgment was entered only as to defendants Ackra and Ackerman, the sole appellants in this action.

2

in the litigation until November 22, 1994.  Between April 28, 1994 and November 22, 1994, Fingerhut's counsel were unable to contact Ackerman by telephone or mail, and an investigative service hired by Fingerhut was likewise unable to locate Ackerman.  By order of May 17, 1994, the magistrate judge found that appellants had still failed to comply with the court's orders regarding discovery and ordered Ackerman to produce discovery by June 1, 1994 or pay the Clerk of Court $100.00 for every day thereafter that he failed to comply.

On July 1, 1994, the magistrate judge ordered discovery closed as to defendants Ackra and Ackerman, and ordered the parties to complete all outstanding discovery no later than July 15, 1994.  Appellants never produced any additional discovery responses.  Appellants also ignored the final pretrial/settlement conference requirements ordered in the case, and failed to attend that final conference on November 21, 1994.  The very next day, November 22, 1994, Ackerman telephoned Fingerhut's counsel -- this was the first contact appellees had had with appellants since counsel withdrew in April 1994.

Fingerhut filed a motion for default judgment on December 5, 1994, and submitted affidavits and a supporting memorandum on December 16, 1994. Ackerman filed an affidavit opposing the motion for default on January 11, 1995, in which he stated that he had been financially unable to secure new legal counsel and that he had been spending significant time in California dealing with a pending lawsuit in that state.  Ackerman requested a 60-day continuance to obtain new legal counsel.  A hearing on the motion for default judgment was held on January 13, 1995.  Neither Ackerman nor any counsel acting on his behalf appeared at the hearing.  On January 17, 1995, the magistrate judge issued his report, and recommended that the motion for default judgment should be granted in its entirety.  Ackerman then, finally represented by counsel, filed objections to the report and recommendation on February 2, 1995.

The district court entered default judgment against defendants Ackerman and Ackra in the amount of $1,266,659.20 on May 4, 1995. Appellants timely filed their notice of appeal of the court's order granting default judgment.

## II. DISCUSSION

The parties disagree on the standard we are to apply in reviewing the district court's grant of default judgment. Appellants contend that the "good cause" standard of Rule 55(c), Fed. R. Civ. P., for setting aside the clerk's entry of default under Rule 55(a) applies. Appellee argues that we should consider the district court's entry of default judgment as default pursuant to either Rule 55 or Rule 37, and that the Rule 60(b) standards governing relief from a judgment apply.[3] We believe both parties are incorrect.

The "good cause" standard applicable to setting aside the clerk's entry of default does not apply here. Appellants argue that this court should apply the "good cause" standard because the clerk did not enter default under Rule 55(a) in this case, thereby depriving appellants of the opportunity to avoid default based on "good cause." However, nothing in Rule 55 guarantees a party the right to seek setting aside a clerk's entry of default before a default judgment is entered for failure to defend. In addition, the entry of default by the clerk under Rule 55(a) is an interlocutory order that is not appealable. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). Therefore, appellants

---

[3]Appellants did not file a motion under Rule 60(b), Fed. R. Civ. P., to set aside the default judgment because it would have been duplicative of the objections they filed to the magistrate judge's report and recommendation. Appellants' decision not to file a Rule 60(b) motion does not hinder their appeal to this Court because a Rule 55(b) default judgment is a final judgment and may be appealed immediately. See, e.g., Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).

have no right to the "good cause" standard on appeal because they had no right to review under that particular standard by the district court, even if the clerk had entered default.

Appellee's argument that review should be conducted in the context of a Rule 60(b) motion to set aside a default judgment is likewise without merit. Rule 60(b) does not apply to our review because that rule does not provide substantive law. See Fed. R. Civ. P. 60 advisory committee's note. Rather, Rule 60(b) defines the procedure for analyzing motions for relief from judgment. Id. In this case, we are not reviewing the district court's denial of a Rule 60(b) motion because appellants never sought relief under Rule 60(b), and therefore those procedures are not relevant.[4] Our review is simply whether the district court abused its discretion in entering default judgment under Rule 55(b)(2). United States v. Harre, 983 F.2d 128, 130 (8th Cir. 1993); FTC v. Packers Brand Meats, Inc., 562 F.2d 9, 10 (8th Cir. 1977) (per curiam).

Default judgment for failure to defend is appropriate when the party's conduct includes "willful violations of court rules, contumacious conduct, or intentional delays." Harre, 983 F.2d at 130. On the other hand, default judgment is not an appropriate sanction for a "marginal failure to comply with time requirements." Id. None of the allegedly mitigating factors relied on by appellants excuse the fact that their dilatory conduct significantly delayed the discovery process during the 22-month period that they were represented by counsel, nor do the mitigating

---

[4]We also reject appellee's contention that we should consider the default judgment as a sanction for discovery abuse under Rule 37. The district court ordered default judgment against appellants pursuant to the "failure to defend" standard under Rule 55. Although default judgment under both Rule 37 and Rule 55 are reviewed for abuse of discretion, Comiskey v. JFTJ Corp., 989 F.2d 1007, 1009 (8th Cir. 1993), the underlying review may differ in a case such as this where the court relied on factors other than discovery abuses in granting default judgment.

5

factors excuse their total failure to participate in the litigation after their counsel withdrew. The latter conduct included complete failure to respond to the magistrate judge's discovery order and other orders, failure to comply with pretrial requirements, and failure to attend the final pretrial/settlement conference; these actions are certainly grounds for default judgment. See, e.g., Comiskey v. JFTJ Corp., 989 F.2d 1007, 1009 (8th Cir. 1993) (default appropriate for failure to comply with numerous court orders and discovery requests); Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 918 (3d Cir. 1992) (failure to comply with court order to obtain substitute counsel, file a pretrial memorandum and respond to discovery); McGrady v. D'Andrea Elec., Inc., 434 F.2d 1000, 1001 (5th Cir. 1970) (failure to appear at pretrial conference).

Appellants' excuses for their conduct do not warrant a finding that the district court abused its discretion in granting default judgment. Appellants contend that they received inadequate notice of default judgment. Under Rule 55(b), a party seeking default judgment must notify the party against whom judgment is sought, at least three days prior to the hearing on the motion, if that party has appeared in the action. Fed. R. Civ. P. 55(b)(2). Fingerhut served its notice of motion for default judgment on Ackerman at his last known address on December 5, 1994, and Ackerman filed an affidavit opposing default on January 11, 1995. The hearing on the motion for default judgment was held on January 13, 1995. Appellee met its burden of providing notice under Rule 55(b) by serving the motion approximately one month prior to the hearing. In addition, we reject appellants' argument that they were not warned by the district court of the possibility of default judgment. Although there is no requirement that a court warn a party that default may occur, the district court had imposed lesser sanctions on appellants before entering default judgment.

Appellants' attempt to hide behind their <u>pro</u> <u>se</u> status is equally unavailing. Appellants' <u>pro</u> <u>se</u> status certainly does not forgive their dilatory tactics before their counsel withdrew. In general, <u>pro</u> <u>se</u> representation does not excuse a party from complying with a court's orders and with the Federal Rules of Civil Procedure. <u>Jones v. Phipps</u>, 39 F.3d 158, 163 (7th Cir. 1994); <u>see also</u> <u>Anderson v. Home Insurance Co.</u>, 724 F.2d 82, 84 (8th Cir. 1983) (upholding district court's grant of default judgment against <u>pro</u> <u>se</u> defendant for failure to respond to discovery requests and failure to provide full information after a court order). The magistrate judge specifically encouraged appellants to obtain substitute counsel, and warned them that failure to do so would not excuse them from complying with discovery obligations or the relevant rules of procedure. Finally, although it was not addressed by the district court, the law does not allow a corporation to proceed <u>pro</u> <u>se</u>. <u>See</u> 28 U.S.C. § 1654; <u>United States v. Van Stelton</u>, 988 F.2d 70, 70 (8th Cir. 1993) (per curiam); <u>Eagle Associates v. Bank of Montreal</u>, 926 F.2d 1305, 1308 (2d Cir. 1991). Therefore, appellant Ackra Direct Marketing Corp. was technically in default beginning on April 28, 1994.

Appellants argue that default judgment was particularly inappropriate because of the large monetary judgment entered. In light of appellants' conduct, we do not find that the district court abused its discretion in entering a default judgment in the amount of $1.2 million. Appellants' argument that Fingerhut and its counsel contributed to the delayed proceedings is likewise without merit. That Fingerhut amended its complaint four times and engaged in some disputes during the discovery process does not excuse appellants' dilatory tactics nor their total failure to participate in the litigation from April 1994 to November 1994. Finally, appellants contend that the existence of a meritorious defense to the merits of the case should prohibit default judgment. However, where the conduct of a party amounts to willful misconduct, the existence of a meritorious defense does not

7

prohibit default judgment.  <u>Pretzel & Stouffer v. Imperial Adjusters, Inc.</u>, 28 F.3d 42, 46 (7th Cir. 1994); <u>Hoxworth</u>, 980 F.2d at 922 ("We decline to require the district court to have a mini-trial before it can impose a default").  The mitigating factors relied on by appellants do not excuse their conduct in this case, and the district court did not abuse its discretion by entering default judgment.

Appellants also contend that the district court abused its discretion by not articulating the reasons for its decision.  Specifically, appellants argue that the court was required to analyze the "widely accepted factors" that are relevant in determining whether default judgment is appropriate. Courts are not normally required to make findings of fact or conclusions of law in ruling on motions.  Fed. R. Civ. P. 52(a); <u>see also</u> <u>DeShane v. Deere & Co.</u>, 726 F.2d 443, 446 (8th Cir. 1984).  However, we may remand when the lack of findings by the district court would substantially hinder our review.  <u>DeShane</u>, 726 F.2d at 446.  This is not a case in which further findings would aid our review.

This Circuit has not articulated specific factors that must be considered in determining whether a Rule 55(b) motion for default judgment for failure to defend should be granted.  Rather, this Court has noted generally that default judgment is appropriate if the conduct is willful, contumacious or intentional.  <u>Harre</u>, 983 F.2d at 130.  In the report and recommendation, which the district court adopted in its entirety, the magistrate judge found that appellee had established twenty-six alleged "acts or omissions by Defendants" as evidence of appellants' failure to defend.  The magistrate judge implicitly found that appellants' conduct was willful by rejecting appellants' proffered justifications for their failure to defend.  The magistrate judge held that appellants' conduct "plainly constitutes a 'failure to defend' as contemplated by Rule 55 of the Federal Rules of Civil Procedure."  This decision was based on the pleadings, the motion for default judgment, and

all evidence submitted in support of and in opposition to the motion. We find that the district court sufficiently articulated its reasons for granting appellee's motion for default judgment for failure to defend under Rule 55(b).

Finally, appellants contend that we should reverse the default judgment at least with respect to the amount of damages because appellee offered insufficient evidence of those damages. In light of the evidence in the record, the district court did not abuse its discretion in awarding damages of approximately $1.2 million, which included $19,300 in sanctions imposed by the magistrate judge's May 19, 1994 order. Appellee's evidence supports a judgment in the amount as entered.

For the reasons set out above, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT