**IOWA STATE UNIVERSITY RESEARCH FOUNDATION, INC. and Metabolic Technologies, Inc., Plaintiffs–Cross Appellants,**

v.

**GREATER CONTINENTS INCORPORATED, GCI Nutrients, and GCI Nutrients Worldwide, Inc., Defendants–Appellants.**

No. 03–1299, 03–1250.

United States Court of Appeals, Federal Circuit.

Nov. 12, 2003.

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

## DECISION

LOURIE, Circuit Judge.

Greater Continents Incorporated, GCI Nutrients, and GCI Nutrients Worldwide, Inc. (collectively, "GCI") appeal from the final decision of the United States District Court for the Southern District of Iowa entering a default judgment in favor of Iowa State University Research Foundation, Inc. and Metabolic Technologies, Inc. (collectively, "Iowa State") in this patent infringement case. *Iowa State Univ. Research Found., Inc. v. Greater Continents Inc.*, No. 4:01–cv–40434 (S.D.Iowa Dec. 2, 2002) (*"Default Judgment"*). Iowa State cross-appeals from the district court's denial of enhanced damages and attorney fees. *Id.* We *affirm* the district court's entry of default judgment; however, we *remand* for the court to determine whether it had personal jurisdiction over GCI and instruct the court to set aside the default judgment as void if it concludes that personal jurisdiction was lacking. We also *affirm* the court's denial of enhanced damages and attorney fees.

## BACKGROUND

Iowa State owns, and Metabolic Technologies is the exclusive licensee of, U.S. Patents 4,992,470; 5,348,979; 5,360,613; and 6,103,764; which are directed to methods for using beta-hydroxy-beta-methylbutyrate ("HMB"). Greater Continents Incorporated is a California corporation with its principal place of business in Burlin-

game, California. It distributes nutritional supplements, including HMB, and maintains a commercial website.

On July 17, 2001, Iowa State filed suit against GCI Nutrients Worldwide, Inc. in the United States District Court for the Southern District of Iowa, alleging infringement of its four patents and seeking damages and injunctive relief. Attorney Frank J. Potasz filed an answer on behalf of GCI Nutrients Worldwide, Inc., but later asserted that it was a nonexistent corporation. The district court subsequently granted Iowa State leave to amend its complaint to name Greater Continents Incorporated and its subsidiary, GCI Nutrients, as defendants. *Iowa State Univ. Research Found. v. GCI Nutrients Worldwide, Inc.*, No. 4–01–CV–80434, slip op. at 1 (S.D.Iowa Dec. 27, 2001) (order). The court directed GCI to file a responsive pleading by January 22, 2002. *Id.*

Apparently believing that the district court lacked personal jurisdiction over it, GCI chose not to respond to Iowa State's complaint or the district court's order. Iowa State moved for entry of default, and the clerk of the court entered a default against GCI.[1] Iowa State then moved for entry of a default judgment.[2] GCI responded on June 12, 2002 by filing a motion seeking to set aside the entry of default and opposing Iowa State's motion for entry of a default judgment.[3] In that motion GCI asserted its belief that the court lacked personal jurisdiction over it and attached an affidavit of GCI's president attesting to facts in support of that assertion.

On July 15, 2002, the district court denied GCI's motion to set aside the entry of default, based on an analysis of the three factors enumerated in *Johnson v. Dayton Electric Manufacturing Co.*, 140 F.3d 781 (8th Cir.1998). *Iowa State Univ. Research Found., Inc. v. Greater Continents, Inc.*, 208 F.R.D. 602 (S.D.Iowa 2002). First, the court found that GCI was "blameworthy" and "culpable" for its failure to file responsive pleadings because it was aware of the action and intentionally failed to participate in the case. *Id.* at 604. Second, the court observed that GCI's demonstration of its "meritorious defenses," including lack of personal jurisdiction, was minimal but raised factual and legal questions. *Id.* Third, the court determined that Iowa State had suffered "legal prejudice" because GCI's default impaired Iowa State's ability to seek timely injunctive relief. *Id.* at 605. Accordingly, because GCI "purposefully adopted a strategy to ignore this case with full knowledge of its existence and nature" and caused Iowa State to suffer legal prejudice, the court denied GCI's motion to set aside the entry of default. *Id.*

On December 2, 2002, the district court granted Iowa State's motion to enter a default judgment against GCI. Finding that Iowa State had provided a reasonable and reliable basis for the amount of its lost profits, the court awarded Iowa State $69,797.57 in damages and permanently enjoined GCI from future infringement. *Default Judgment*, slip op. at 3. However, the court refused to award Iowa State enhanced damages under 35 U.S.C. § 284

---

1. Federal Rule of Civil Procedure 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

2. Federal Rule of Civil Procedure 55(b)(2) sets forth the conditions under which a court may enter a default judgment.

3. Federal Rule of Civil Procedure 55(c) permits a court to set aside an entry of default "[f]or good cause shown."

because it was unable to conclude from the record that GCI's actions rose to the required level of willfulness or wantonness. *Id.* at 4–5. The court also denied Iowa State's motion for attorney fees on the ground that the case was not exceptional under 35 U.S.C. § 285. *Id.* at 5.

GCI timely appealed to this court, and Iowa State timely cross-appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

In deciding issues not unique to our exclusive jurisdiction, we apply the law of the regional circuit in which the district court sits – here, the Eighth Circuit. *See Midwest Indus., Inc. v. Karavan Trailers Inc.,* 175 F.3d 1356, 1359 (Fed.Cir.1999) (en banc in relevant part). The Eighth Circuit reviews the determination whether to enter a default judgment for an abuse of discretion. *United States v. Harre,* 983 F.2d 128, 130 (8th Cir.1993). The Eighth Circuit reviews questions of personal jurisdiction *de novo. Burlington Indus., Inc. v. Maples Indus.,* 97 F.3d 1100, 1102 (8th Cir.1996).

We apply Federal Circuit law to the issues of enhanced damages and attorney fees in patent infringement cases. We review an award or denial of enhanced damages under 35 U.S.C. § 284 for an abuse of discretion; however, the antecedent determination whether the infringement was willful is a question of fact that we review for clear error. *Graco, Inc. v. Binks Mfg. Co.,* 60 F.3d 785, 792 (Fed.Cir. 1995). Similarly, we review an award or denial of attorney fees under 35 U.S.C. § 285 for an abuse of discretion, but the antecedent determination whether the case is exceptional is a question of fact that we review for clear error. *Forest Labs., Inc. v. Abbott Labs.,* 339 F.3d 1324, 1328 (Fed. Cir.2003).

### A. *Default Judgment*

GCI first challenges the district court's refusal to set aside the default entered in favor of Iowa State and its subsequent entry of a default judgment. GCI argues that it was not blameworthy or culpable because its failure to respond occurred in good faith based on counsel's advice that the court lacked personal jurisdiction. GCI also asserts that it presented two meritorious defenses, including lack of personal jurisdiction. GCI further contends that Iowa State was not prejudiced by the delay in the proceedings, pointing out that prejudice may not be found from delay alone and that there was no evidence to indicate a loss of evidence or an inability to obtain necessary information. Overall, GCI argues that its failure to respond was excusable under the circumstances.

Iowa State responds that the district court did not abuse its discretion in declining to set aside the entry of default. Iowa State argues that GCI was blameworthy because it knowingly and intentionally ignored the court's order to file a responsive pleading by January 22, 2002, and that the court's decision was appropriate based on blameworthiness alone. Iowa State next argues that the court properly considered the meritorious defense factor, finding GCI's showing to be minimal, and that it was within the court's discretion to weigh that factor with the other two *Johnson* factors. Lastly, Iowa State argues that the court's finding of legal prejudice was based on the fact that GCI's unilateral actions prevented Iowa State from obtaining injunctive relief and, in any event, was not necessary in light of the court's finding of blameworthiness.

As an initial matter, we note that GCI frames the first issue in its brief as an appeal from the district court's refusal to set aside the default entered in favor of

Iowa State. An order entering default under Rule 55(a) or refusing to set aside an entry of default under Rule 55(c) prior to entry of judgment, however, is interlocutory and generally not appealable. *See Johnson*, 140 F.3d at 783; *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 855 (8th Cir.1996). Nonetheless, because the district court in this case entered a final default judgment under Rule 55(b)(2) and GCI also argues for reversal of that judgment, our review is of the entry of the default judgment. We accordingly will not apply Rule 55(c)'s "good cause" standard, to which the *Johnson* factors apply, and instead will simply review whether the district court abused its discretion in entering a default judgment. *Forsythe v. Hales*, 255 F.3d 487 (8th Cir. 2001); *Fingerhut Corp.*, 86 F.3d at 856, 857 (observing that the Eighth Circuit has not articulated specific factors that must be considered when reviewing a Rule 55(b) default judgment).

■ Turning to the merits, we agree with Iowa State that the district court did not abuse its discretion in entering a default judgment against GCI. A "[d]efault judgment for failure to defend is appropriate when the party's conduct includes 'willful violations of court rules, contumacious conduct, or intentional delays.'" *Fingerhut Corp.*, 86 F.3d at 856 (quoting *Harre*, 983 F.2d at 130). Conversely, a "[d]efault judgment is not an appropriate sanction for a 'marginal failure to comply with time requirements.'" *Id.* (quoting *Harre*, 983 F.2d at 130). GCI's failure to respond to both Iowa State's complaint and the district court's order requiring a response by January 22, 2002 was clearly more than a marginal violation of time requirements. GCI intentionally delayed the proceedings by choosing not to respond to the complaint or the court order. Its only participation in this case did not take place until June 12, 2002, after Iowa State had filed a motion seeking a default judgment. GCI's failure to respond thus appeared to be strategic, rather than a mere oversight. We therefore cannot say that the district court's entry of a default judgment was an abuse of discretion. *See Inman v. Am. Home Furniture Placement, Inc.*, 120 F.3d 117, 119 (8th Cir.1997) (affirming a default judgment based on the defendant's failure to respond to the plaintiff's complaint, discovery requests, and repeated inquiries).

B. *Personal Jurisdiction*

GCI next contends that the default judgment entered against it is void because the district court lacked personal jurisdiction over it. GCI maintains that the court's exercise of personal jurisdiction violated both the Iowa long-arm statute and due process because GCI lacked "minimum contacts" with the forum state. GCI points out that it is incorporated in and has its principal place of business in California, that it has never made any sales to Iowa residents or companies, that it maintains a passive website that only supplies information about its products, and that it does not transact any business over the Internet.

Iowa State responds that, by failing to file a responsive pleading, GCI precluded Iowa State from obtaining discovery relating to the question of personal jurisdiction. Iowa State also argues that GCI presented the district court with only conclusory statements, which were insufficient to establish a lack of personal jurisdiction. Iowa State alternatively argues that any determination regarding personal jurisdiction should be made in the first instance by the district court.

■ "A default judgment rendered by a court which lacked personal jurisdiction over the defendant is void any may be

attacked either directly in the rendering court or through collateral attack upon enforcement of the judgment." 10 James Wm. Moore, *Moore's Federal Practice* § 55.50[2][b][i] (3d ed.2003); *see, e.g., Wolf–Tec, Inc. v. Miller's Sausage Co.*, 899 F.2d 727, 728 (8th Cir.1990) (holding that a default judgment was unenforceable because the district court lacked personal jurisdiction over the defendant). In this case, GCI challenged the district court's personal jurisdiction over it as soon as it participated in the litigation, claiming that it did not have sufficient contacts with the state of Iowa to render it subject to the court's jurisdiction. The district court never addressed that argument on the merits, although it did indicate that factual and legal questions existed on the question of personal jurisdiction. *See Iowa State Univ.*, 208 F.R.D. at 604. The district court should therefore have determined and still must determine in the first instance whether it possessed personal jurisdiction over GCI.

Iowa State argues nonetheless that GCI should be estopped from challenging the default judgment as void for lack of personal jurisdiction because GCI's own failure to respond to Iowa State's complaint and the district court's order prevented Iowa State from obtaining discovery relating to the issue of personal jurisdiction. We disagree. A defendant may choose to ignore judicial proceedings, risk a default judgment, and then later challenge that judgment on jurisdictional grounds. *See Ins. Corp. of Ir. v. Compagne des Baucites de Guinee*, 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Although a defendant may be estopped from challenging personal jurisdiction if it interferes with the plaintiff's attempt to establish personal jurisdiction through discovery, such an estoppel arises only after the defendant has placed

the issue of personal jurisdiction into question. *See id.* at 706–07, 709, 102 S.Ct. 2099. In the present case, however, there is no indication that GCI prevented Iowa State from obtaining discovery after GCI had placed personal jurisdiction at issue. On the contrary, GCI challenged the court's jurisdiction as soon as it participated in the district court proceedings and submitted an affidavit providing facts to support its position that the court lacked personal jurisdiction over it. GCI is therefore entitled to a determination on the issue of personal jurisdiction.

Iowa State also argues that GCI failed to establish that the district court lacked personal jurisdiction. When personal jurisdiction is challenged, however, the plaintiff has the burden of showing that jurisdiction exists. *Burlington Indus.*, 97 F.3d at 1102. As far as we can tell from the record on appeal, Iowa State's only evidence relating to personal jurisdiction is its amended complaint, which simply asserts the belief that GCI "has advertised products in Iowa via the [I]nternet and presumably has sold products to residents of the State of Iowa." On the other hand, GCI submitted to the district court the affidavit of Richard A. Merriam, the president of GCI Nutrients, attesting that GCI has never had any accounts in Iowa, sold or promoted HMB in Iowa, promoted HMB over the Internet, or done business in Iowa. Thus, it appears that there is a real question as to whether the district court possessed personal jurisdiction over GCI. However, a determination of personal jurisdiction is a fact-intensive inquiry, and one that we are unable to make from the record before us. We therefore remand to the district court to determine in the first instance whether it had personal jurisdiction over GCI. If the court determines on remand that it lacked personal jurisdiction over GCI, then it should set aside the default judgment as void. If, however, the

court finds that it did have personal jurisdiction, then the default judgment should stand.

## C. *Enhanced Damages and Attorney Fees*

In its cross-appeal, Iowa State challenges the district court's refusal to award enhanced damages and attorney fees. Iowa State argues that it established the requisite willfulness by showing that GCI was sent a cease-and-desist letter, which made clear the patent rights asserted by Iowa State, but nonetheless continued to sell HMB. As for attorney fees, Iowa State contends that this is an exceptional case because GCI sold HMB with knowledge of Iowa State's patent rights and engaged in dilatory litigation tactics by, for example, failing to file responsive pleadings. Iowa States thus asks us to remand these issues to the district court to determine in its discretion whether enhanced damages and attorney fees are warranted in this case.

GCI responds that the district court properly declined to enhance the damages award because there was no evidence of willfulness. GCI maintains that it promptly responded to Iowa State's cease-and-desist letter in 1996, advising Iowa State that it believed that its sales of HMB did not infringe because the asserted patents covered only applications of HMB involving specific uses. With regard to attorney fees, GCI argues that the court correctly determined that Iowa State had not proved willfulness or the existence of exceptional circumstances.

We agree with GCI that the district court did not clearly err in finding that GCI's infringement was not willful. As the district court explained, the record was insufficient to establish the requisite level of willfulness. The court's refusal to award enhanced damages was therefore not an abuse of discretion.

■ We also agree with GCI that the district court did not clearly err in finding that this case is not exceptional under 35 U.S.C. § 285. As discussed above, Iowa State failed to establish that GCI's infringement was willful. Moreover, GCI's decision not to file responsive pleadings was based on its good-faith belief that the court lacked personal jurisdiction over it and therefore did not amount to bad-faith litigation. Accordingly, the court's denial of attorney fees was not an abuse of discretion.

## CONCLUSION

For the foregoing reasons, we affirm the district court's entry of a default judgment against GCI. However, we remand for the district court to determine whether it had personal jurisdiction over GCI and, if it finds that it lacked personal jurisdiction, to set aside the default judgment as void. We also affirm the court's denial of enhanced damages and attorney fees.